May it please the Court, Tara Morrissey for Appellant Michael Fausett. I'd like to reserve two minutes for rebuttal. Your Honors, the magistrate and district judges made several blatant errors when adjudicating Mr. Fausett's claims for deliberate indifference to medical needs. The visiting magistrate judge first refused to appoint counsel because she mistakenly believed that there was no pool of pro bono attorneys. Proceeding without counsel, Mr. Fausett tried to secure medical testimony. He tried to subpoena his treating physicians, but the magistrate refused to allow service because he could not afford the service fee, when, in fact, that fee was statutorily waived. So without testimony from his own physicians, Mr. Fausett asked three times for appointment of a neutral medical expert, but the magistrate again refused because he could not afford it. Despite all of these attempts to secure medical testimony, the district court relied on the absence of medical testimony when granting summary judgment against Mr. Fausett. Now, these were all legal errors that should be reversed, but even if we set them aside and accept the current record, summary judgment against Mr. Fausett was improper on two claims. First, Mr. Fausett presented ample evidence that prison staff knowingly disregarded his need for a wheelchair or walker after undergoing painful spinal fusion surgery. I was looking for any information that UC Davis ordered a walker or a wheelchair. Where is that in the record? I'm sorry, that UC Davis recommended? There is nothing in the record that UC Davis recommended a walker or wheelchair. But what we have are at least three pieces of evidence in the Mule Creek prison staff's own medical records. There was a physician's order at ER 92 stating that Mr. Fausett should receive a walker for use in-house and a wheelchair for longer distances. Now, given that he was required to travel miles per day just to get his medicine, a wheelchair was certainly required. In addition, we also have, and this is in the UC Davis notes that were transported to Mule Creek, there were conversations between nurses at UC Davis and Mule Creek because Mule Creek nurses did not want to receive Fausett back until they had a spot for him in the infirmary. They said the infirmary beds are full and Mr. Fausett's cell is a distance away,  and then another nurse suggested that maybe he could return using a wheelchair. We also know that Mr. Fausett was taken in the first instance back to his cell in a wheelchair, further confirming that a wheelchair was required. We also have other evidence that put prison personnel on notice. Mr. Fausett was in excruciating pain, as you can see from the numerous medical records. We also know that Dr. Musil was in a wheelchair. Malpractice negligence, that this was deliberate indifference. That there was some, you know, actionable intent on the part of the people who you say should have provided him with this. Judge Trott, the district court did not even address that question. And so, but if this court were to consider it, it's clear from the medical records and this court's opinion in Jett states that a litigant is entitled to a reasonable inference that prison personnel are aware of his medical files. So we have a lot of awareness here, given the. But you have to have more than just an awareness. You have to have a deliberate. An awareness and a conscious disregard for a serious medical need. And what's the evidence of that? The evidence is that they were aware of all this, and then they disregarded, they did not provide him with a wheelchair. So you think that's enough to get you to the heightened mens rea that's necessary for this? Yes, when you have a prisoner who's consistently reporting serious levels of pain. Excruciating, in his words. Repeated doctor's visits. And when you look at this surgery in context, it's a posterior lumbar interbody fusion surgery, which the neurosurgeon at UC Davis reminded Mule Creek that this particular surgery is very painful for two to four months. And Judge Trott, we also have evidence in the record from Dr. Lanzano, a psychiatrist, and from a social worker who saw Mr. Fawcett, and they provided some context for what was going on here. Dr. Lanzano said that when he confronted personnel about these allegations, their responses varied between overt cooperation to sardonic dismissing of Fawcett's complaints, opining that Fawcett was simply gaming the system and drug-seeking. And the social worker, Mr. Esposito, said there appeared to be a bias against the inmate centered around his alleged drug-seeking. He has struggled with retaliatory behaviors involving inordinate delays and inappropriate remarks made by medical staff. And then he went on to say that in his opinion and in Dr. Lanzano's opinion, he was not drug-seeking and he was not exaggerating his symptoms. That's at ER 67, and Dr. Lanzano is at ER 62. But the prison did give him medication. Yes, Your Honor. They did not give him ever a wheelchair or walker, and that's our first claim on summary judgment. And as it's been pointed out, none of the doctors from the hospital recommended that he have a wheelchair. That's correct. They said that he used a front-wheeled walker for comfort, and, you know, a patient after surgery is typical. But let's go to the medicine or to the medication. What's your – I want to understand your position on the medication, because he was given medication. He was. He was given a combination of Vicodin, Robaxin, and Motrin at most points during the relevant period. And on August – And you say – is your argument that the laws that we're talking about required that he be given Valium, even though the prison doesn't usually give out Valium? Yes, Your Honor. That in this particular situation, when the current drugs were not effective to treat Mr. Fawcett's pain, and when an outside specialist recommends Valium and says that it helped him well in the hospital, that yes, in that case, the prison should have given him Valium. They said it was not given routinely. They didn't say they had no discretion to give it. And, in fact, we know that Mr. Fawcett did receive Valium after his first surgery back in 2006, and he was on it for about a month. That's at ER 50 and FER 6 to 11. So when we take that and look at his excruciating pain that was ongoing, August 1st, he got that combination of drugs, Vicodin, Robaxin, and Motrin. August 3rd, he submitted a slip at ER 51 saying, I need to see the doctor about my medication. It is not effective. My pain levels are excruciating, especially at night. It feels like someone's hammering nails in my back, legs, and shoulders. And then on August 15th, Mr. Fawcett, on those drugs, went to Dr. Musilar at UC Davis, and that's when Dr. Musilar told Mule Creek that Mr. Fawcett requires Valium and that that helped him well because he had high pain levels. And at SCR 4, UC Davis actually recommended again on October 24th that Mr. Fawcett receive Valium. So what's the damage in receiving an alternate pain medication? The damage is chronic continued pain and suffering. And so do we have a measure of the pain that you would have had under one medication versus another in the record? No, Your Honor. Mr. Fawcett said that simply there's evidence that it was not effective and that he was undergoing pain. We do know that Valium, though, helped him well in the hospital in Dr. Musilar's words. So it at least would have been reduced. And so even on this summary judgment record, summary judgment was improper on both claims, Your Honors. But going even further back to the magistrate judge's rulings, first, the magistrate judge's refusal to serve subpoenas on Mr. Fawcett's treating physicians was erroneous. It was based on his inability to pay for service, but the statute for informal pauperous litigants expressly waives the fee for service. And I'd like to clarify that Mr. Fawcett did preserve his objection to this ruling. At ER 253, he filed objections to it which were denied by the magistrate judge, but not addressed by the district court. And at ER 251, he filed a timely motion for reconsideration. In Section 19, 28 U.S.C. 1915, at least in my review of it, does not waive the subpoena fees for plaintiffs proceeding informal pauperous. What's your ñ can you point to why you think it does? It says that it waives all service of process, and that's been interpreted to include witnesses. Is there a case that you have on that? Tedder v. Olden says that. It's referring to witness fees. And there was no ñ the appellees argued that there would have been other fees that would have accrued, but given the unique procedure under which they were proceeding, this was ñ there would not have been any other fees because there were just written deposition questions and written deposition answers. And Mr. Fawcett pointed out the waiver of fees in page 4 of his supporting memo to the Court when he asked for reconsideration. So he reasonably apprised the district court that he was contesting the magistrate judge's ruling. You have about 20 seconds. Do you want to reserve? I would like to reserve. We'll give you a little more time than that. Thank you. We'll hear from the government. Good morning, Your Honors. And if it pleases the Court, I'm Martha Stringer, and I represent the five health care practitioners who have been sued by Mr. Fawcett in this case. I was going to start out with a routine, but then listening to the questions, I kind of changed it. This is not an extraordinary case. I know that the plaintiff has argued that it is, but this case is no different from the majority of cases that are now before the mainly the Eastern District of California. It's a relatively simple case. It's down to was there deliberate indifference by substituting a number of other drugs for Valium and the wheelchair walker incident. And there cannot be any collective guilt. You have to look at each of these five individuals separately and their intent. And you mentioned that earlier. And there is no evidence that any of these five was indifferent to Mr. Fawcett's serious medical needs. The Valium issue, Dr. Musilar did not prescribe Valium in his discharge papers. He did once in about a month later, and the doctors who could prescribe it, the two except by telephone when he came back from the hospital. But the other two doctors tried a lot of different medications. And if you look further into the further excerpts of record that were provided in the reply papers, they sent him to pain clinics where no Valium was prescribed. He had a problem with pain, there is no doubt. But the record is replete with attempts of his physicians to deal with that issue. The service of summons issue, the record is also fairly replete with the attempts of defense counsel to help Mr. Fawcett get written questions to people who were affiliated with the prison, and that worked. We're talking about the deposition questions he wanted to send to his outside physicians. And that's Rule 31. And there isn't any requirement of service of process, but there are also a lot of fees associated with a Rule 31 deposition, which is what these people would have had to do. And that is why Magistrate Cook did not authorize this particular service.  Yes. Can you talk to me about the jurisdiction there with Magistrate Cook and whether that is a significant issue here? When that first came up, I thought, my goodness, this is an interesting question, because there's very little on it. But if you put together what had happened, I think you can see that it is perfectly fine, because Judge Ishii was the chief judge of the Fresno District of the Eastern District, and he appointed one of the magistrates, Roger Hunt, who was the chief judge in Nevada, as a visiting judge. Then, according to 28 U.S.C. Section 636a, every U.S. magistrate shall have, within the district in which sessions are held by the court that appointed the magistrate, and at other places where that court may function, certain powers. Well, Magistrate Cook was appointed by Hunt, who was appointed by Ishii, and so she could act under Hunt, under Ishii, in the Fresno Division of the Eastern District of California. So what case says that? There isn't a case that says that. I mean, the difficulty is I think there is a pretty arguable jurisdictional problem here. And I've, you know, the magistrate-judge system has been wonderful, and I've disagreed with some of our cases, although I have to concede they're probably right, that strictly construe the magistrate-judge statutes in terms of consent and jurisdiction and so forth. And it would appear here that the judges didn't dot the i's and cross the t's necessary to confer jurisdiction on the magistrate-judge. There is a paucity of cases on. There's nothing on 636G about the emergency situation. I would point out that the So there's no designation, and there's no declaration of the emergency, right? There is no declaration of emergency because I do not believe that they were considering an emergency at that point. However, if one were to take judicial notice of what was going on in the Eastern District back at that time, there was And still is. And still is. Yes. But, I mean, what it says is in an emergency and upon the concurrence of the chief judges of the districts involved. Generally, there are statutes that talk about declarations of judicial emergencies. And they did not declare a judicial emergency in the Eastern District. And it may be a technical issue, but that's what jurisdiction is. I agree with you. It is a technical issue. But if you go beyond that, and then Rise above principle, as we say. Yeah. Well, if you look at what went on for about a year and a half with 166, I think, docket entries on a lot of goings-on in this case, it would seem that the case was handled appropriately. But, for example, you have the same situation when somebody doesn't get the right consent. And it goes on for years. And at the end of it, it comes up here. And we say, well, look at the record. You didn't get a consent way back five years ago. And so we have to unwind the whole thing. So what happens if the magistrate judge lacked jurisdiction? What does that leave us? Well, again, I don't have an answer for you because I haven't seen this case come up. It's five years, six years down the road. We have a magistrate who didn't have jurisdiction. What happens? You could argue that she did the nondispositive issues, and then the dispositive issue went to the visiting judge, Hunt, who did have jurisdiction. And the plaintiff consent to have the nondispositive pretrial matters heard by a magistrate upon reassignment? Well, he did not. He thought he declined consent of a magistrate, but that only applies to the dispositive motions. So the argument. It seems to me there are two paths around this. And one is that, in fact, this was purely an Eastern District matter anyway because you had a VJ. Two, you might say by coincidence there are two chief judges involved, and you can apply concurrence. So it's an odd situation. It's not a pure statutory question. But it is one that has, because we don't want to have these situations where you have to make a decision, and perhaps we ought to decide that. If it's unwound, then I'm not sure where that leaves us. Well, it probably leaves you with being cited by a number of cases because you'll be the only thing on it. I think it does come back to you. How often does this happen in the Eastern District? I've never seen it happen. Yeah. I mean, because usually what the way — I'm familiar. In fact, I sat by designation in the Eastern District. A lot of us did to help cure the problem. But basically, their instruction to us was don't use our magistrate judges, you know. Do it yourself. Or we have to do something else. I mean, that was a pretty firm instruction. But we still do circle back to the dispositive issue was dealt with by Judge Hunt. And the Cook didn't really have anything to do with that if we look at the facts of the case. No, except that some of the proportions of appeal have to do with the magistrate judge's actions. For example, declining counsel, right? They do. Yeah. But then you'd have to simply make the judge. Did Judge Hunt confirm that order, do you know? I don't believe that — well, Judge Hunt would always have the power to review a nondispositive ruling. Sure. But my question was did he, do you know? Not to my knowledge. Okay. Oh, all right. I took you away from your central argument. So please, we'll give you a little bit of time. That was the more interesting issue, because otherwise it comes down to counsel. And there's really been no evidence that he needed the assistance of counsel. If you look at his docket entries, if you look at the excerpts of record, you'll see that he was an intelligent man who wrote well. The evidence — there's some evidence in the record that he — other people had judged him, his physicians as well, spoken, articulate. He had an assistant, because he went into court and asked that he and his assistant get priority status in the law library. And there's one other reference to an assistant. What do you make of the statement that there was no pool of pro bono lawyers? Well, that's a — district judges have wide discretion to appoint counsel or not appoint counsel. But if you're not appointing counsel based on a fact that turns out to be completely wrong, that may be another matter. Well, there are probably two issues there.  Well, she said she didn't know of one. But she — But that's just wrong, though. It is — it is wrong. It's — well, it's correct in Nevada, which, of course, I don't want to talk about. But it's — it is wrong for the California, for the — for the Eastern District. There was a pool. Yeah. But in order to get to the pool, you have to find that there are extraordinary circumstances justifying going to that pool. So while she questioned whether there was a pool, she never got to that because she found there was no reason to appoint counsel in the first place. And that seems to be the correct ruling. Mr. Fawcett did a great job representing himself. There was no need to appoint counsel. There was no extraordinary reason to appoint him counsel. He will say — he has said, I was on psychiatric medication. Well, probably the majority of inmates are at some point on psychiatric medication. But he was doing a fine job. So to question — the question by the magistrate is really harmless error because the decision was correct. Okay. Any further questions? Okay. Thank you for your argument. You're welcome. Your Honors, with respect to the jurisdiction of the magistrate judge, we can't pretend that Judge Cook was sitting in the District of Nevada. This was clearly an Eastern District of California case. The case caption says, Eastern District of California. Judge Cook applied Eastern District of California rules. And the reference to Section 636a's, the phrase, at other courts where — sorry — at other places where that court may function, I believe that's referring to 28 U.S.C. 141, which refers to special sessions of the district court. That authorizes the district court to sit outside of the district, but again, only in an emergency. That was not the case here. So what's the consequence of that? I think the case, Judge Thomas, is that the outcome is that the order referring the case to Judge Cook has to be vacated and we go back to the beginning. But doesn't that leave intact the substantive findings of Judge Hunt? I don't think it can leave those intact, Your Honor, because as we see in this case, the magistrate judge definitely has significant power. These nondispositive rulings ended up making the difference in this case. At ER-6, the district court faulted Mr. Fossett for not coming up with any medical testimony. And that's exactly what he was trying to obtain in these underlying rulings. So I don't think we can separate them. And I don't think that we can imply concurrence between the judges. Even if we could, we can't go back and retroactively say that there was an emergency. 636 is titled — Well, I don't think there's much doubt that there was an emergency, whether they called it or not. I think Ms. Stringer is quite right about that. Well, I do think it's important that — We asked 80 judges out of the district to take 15 cases each to help them out. Well, I do think it's important, and this case demonstrates why the magistrate statute is taken seriously and that its limitations are respected. As we see in this case, it really did impact the rulings. Any final thoughts on the merits of the case you want to share with us? Your Honor, we would just ask that you reverse the magistrate judge's rulings that prevented Mr. Fossett from litigating the case and obtaining medical testimony, and that you reverse the summary judgment rulings. Thank you for your time. Thank you both for your arguments, and thank you for your pro bono representation. We greatly, greatly appreciate it. The case has heard and will be submitted for decision.
judges: Trott, Thomas, Murguia